UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
------------------------------X
NEW YORK HOTEL AND MOTEL TRADES :
COUNCIL, AFL-CIO,               :   Civil Action No. 21-CV
                                :
            Petitioner,         :
                                :   **PETITION TO CONFIRM**
      v.                        :   **LABOR ARBITRATION AWARDS**
                                :
NAVIKA CAPITAL GROUP LLC d/b/a  :
SHERATON MAHWAH HOTEL,          :
                                :
            Respondent.         :
------------------------------X

Petitioner, New York Hotel and Motel Trades Council, AFL-CIO ("Union") by its attorneys, Pitta LLP, brings this Petition and alleges as follows:

1.  The Union brings this action against Navika Capital Group LLC d/b/a Sheraton Mahwah Hotel ("Hotel" or "Respondent"), to confirm arbitration awards No. 2020-95, 2021-09, and 2021-42 (collectively "Awards"), issued by the contractual industry arbitrator, directing the payment of severance pay and health fund contributions due for the Hotel's laid off employees.

2.  The Awards draw their essence from the parties' collective bargaining agreement and its expansive arbitration clause, there are no timely valid grounds to vacate the Awards, and the Hotel persists in refusing to comply with the Awards. Accordingly, for the reasons set forth below, in the accompanying Declaration of Alyssa Tramposch (the "Tramposch Decl.") and Memorandum of Law, and on all papers filed in this action, the Union's Petition to confirm the Awards should be granted.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action to confirm a labor arbitration award pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 and 28 U.S.C. § 1331, federal question. The action is a petition heard as a motion pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*

4. Venue properly lies in this District because the Hotel maintains its principal place of business in this District, and the underlying events giving rise to the Awards occurred in this District.

## THE PARTIES

5. The Union is a labor organization within the meaning of federal labor law, Section 2(5) of the LMRA, 29 U.S.C. § 152(5).

6. The Union represents nearly 40,000 workers in the hospitality and gaming industries of New York and Northern New Jersey with its principal office at 707 Eighth Avenue, New York, N.Y. 10036.

7. Navika Capital Group LLC ("Navika Capital") is a New York limited liability company created and existing under the laws of the State of New York located at 521 RXR Plaza, Uniondale, 11556. Respondent owns, manages, and/or operates the Sheraton Mahwah Hotel ("Hotel") located at 1 International Blvd Route 17 North, Mahwah, NJ 07495-0027 and is an "employer" within the meaning of federal labor law, 29 U.S.C. § 152.

## STATEMENT OF CLAIM

### The Relevant Provisions of the GRIWA

8. Terms and conditions of employment for workers represented by the Union outside New York City are governed by an industry-wide agreement known as the Greater Regional

Industry-Wide Agreement ("GRIWA").

9. Among other provisions, the GRIWA establishes a living wage (Art. 3, 4 and 20 and Schedule A), comprehensive health care (Art. 5), a secure retirement (Art. 6) and, to resolve any and all disputes between the parties, the broadest possible arbitration language in Article 24, mandating that any and all disputes between the parties be decided exclusively by the Impartial Chairperson, a permanent industry arbitrator. A copy of the GRIWA is attached to the Tramposch Decl. as Exhibit A.

10. The Hotel is bound by the GRIWA with the Union by virtue of an assumption agreement executed on October 27, 2017 by Navika Capital Group LLC, on its own behalf and on behalf of its related and affiliated entities. A copy of the Assumption Agreement is attached to the Tramposch Decl. as Exhibit B.

11. GRIWA Article 24 provides, in relevant part:

> All complaints, disputes or grievances arising between the parties hereto involving questions or interpretation or application of any clause of this Agreement, or any acts, conduct or relations between the parties, directly or indirectly, which shall not have been adjusted by and between the parties involved shall be referred to a permanent umpire(s) to be known as the Impartial Chairperson, and his/her decision shall be final and binding upon the parties hereto. In addition, any questions regarding arbitrability, substantive, procedural, or otherwise, or regarding the Impartial Chairperson's jurisdiction or authority shall be submitted exclusively to the Impartial Chairperson for final and binding resolution, whose decision shall be final and binding on the parties hereto and the parties waive any right to challenge such determination by the Impartial Chairperson regarding arbitrability, jurisdiction or authority in any other forum.

12. Article 55, Severance, provides in relevant part:

> A. In the event of termination or permanent layoff (i.e., a layoff of a non-probationary, lasting or expected to last for six (6) months or more) resulting from the (1) closing of the Employer or a restaurant,

{00690320-1}

3

department or a concession therein; or (2) an elimination of a shift; or from (3) technological change; or (4) the conversion of use of the Employer's premises, severance pay shall be paid as a result of any of the foregoing. Receipt of such severance pay does not terminate or waive an employee's right to recall.

B. For the purpose of calculating severance pay, the Employer shall pay to the non-probationary employees affected an amount equal to five (5) days of wages for each year of service for each affected employee provided the employee was employed for not less than six (6) months' service (twice that amount for tipped employees). The Employer shall further make COBRA payments on behalf of such employees for six (6) months. Unless otherwise proven, all employees laid off within one (1) year of a permanent closing shall be presumed to have been terminate as a result of the closing and shall therefore be eligible for severance pay. In connection with the foregoing, the Employer shall issue, and send to the Union for distribution, checks made payable to the individual employees entitled to severance pay in accordance with the foregoing formula. The Employer agrees to make all statutory tax withholdings prior to transmittal of the checks to the Union for distribution. Payment shall be computed to the nearest quarter year.

13. As a result of the GRIWA and the very broad arbitral authority of the Office of the Impartial Chairperson ("OIC"), all disputes of any nature between the Union, industry employees, and any party bound to the GRIWA, have been resolved peacefully, without labor strife and with only limited litigation. To date, the industry has weathered and rebounded from every disaster, natural (Superstorm Sandy), human (9/11), or economic (2008 recession).

**Respondent Fails to Pay Prescribed Severance and Health Care**

14. However, in March 2020, as a result of an unprecedented pandemic caused by the novel coronavirus ("COVID"), the then thriving New York and New Jersey region hospitality industry largely closed for indeterminate length. Hotel occupancy plummeted from 77% in February 2020 to about 34% in March 2020. Roughly 85% of workers represented by the Union were laid off, losing the steady income stream to support themselves and their families, and facing

{00690320-1}

imminent loss of health care coverage during a pandemic. This crisis continues.

15.     The Hotel laid off most of its Union represented employees on March 21, 2020, but never closed completely.

16.     Notwithstanding the express obligations of GRIWA Article 55, the Hotel failed to make the requisite severance payments to its terminated employees or the payment of the COBRA premiums to the health benefits fund on their behalf after it closed during the current pandemic.

**The Union Wins OIC Awards No. 2020-95, 2021-09 and 2021-42**

17.     The Union demanded arbitration of the Hotel's failure before the Office of the Impartial Chairperson ("OIC") pursuant to Article 24 of the GRIWA. A copy of the Union's arbitration demand dated October 23, 2020 is attached to the Tramposch Decl. as Exhibit C.

18.     The Union and Hotel, by counsel, presented their respective positions by evidence and argument to Impartial Chairperson Ira Drogin at hearings on December 4, 2020, January 28, 2021, and March 15, 2021.

19.     Impartial Chairperson Drogin rendered Award 2020-95 on December 7, 2020, Award 2021-09 on January 28, 2021, and Award 2021-42 on April 16, 2021 (collectively, the "Awards"), copies attached to the Tramposch Decl. as Exhibit D. The Awards were served on the Hotel by email from OIC Administrator Pamela Ozoria the day each was issued by e-mail, copy attached to the Tramposch Decl. as Exhibit E. In the Awards, Impartial Chairperson Drogin addressed the parties' arguments, noted the Union's calculation of amounts due, and applied GRIWA Article 55 and OIC arbitral precedent to reach his decisions. Impartial Chairperson Drogin ruled in Award 2021-42 that:

> The Union grieves that the Hotel has not fully complied with my Award #2021-09, in which I ordered the Hotel to make severance bridge payments retroactive to October 1, 2020 as well as COBRA payments including the month of March 2021. The Hotel acknowledges that it has not made bridge payments in the amount of

{00690320-1}

$105,340.60 because of inability to pay due to the effects of the pandemic and is losing substantial sums every month. The Union requests an assessment of a 15% penalty pursuant to Article 24 L of the GRIWA Agreement. The evidence in this case shows that a "Cobra" payment of $38,760.55 is due for March 2021 to the UNITE HERE Greater Regional Health Plan. The Hotel acknowledges that it too has not been paid. The Union does not seek an Article 24 L 15% penalty on that sum. I am sympathetic to the plight of this Hotel, which due to the pandemic is struggling to survive and provide jobs to its employees. Nevertheless it must meet its financial obligation to its employees. It is undisputed that the Hotel was aware of its obligation to make retroactive severance payments back to October 1, 2020, and to make its six monthly Fund payments. Under these facts and circumstances I find that the Hotel's non-payments are wrongful and the Union on behalf of the employees affected is entitled to a 15% penalty on the severance payments not made.

Award 2021-42 at 2.

20. Accordingly, Impartial Chairperson Drogin ordered the Hotel to pay a total of $159,967.24, consisting of wages of $105,420.60, COBRA premiums of $38,760.55, and a 15% contractual penalty of $15,786.09.

**The Hotel Fails to Comply With the Awards**

21. To date, though duly demanded, the Hotel has failed and refused, and continues to refuse, to comply with the Awards.

22. The Awards have not been vacated by order of any court of competent jurisdiction and are still in full force and effect.

23. The Awards draw their essence from the GRIWA as fully set forth by the arbitrator in the Award.

24. There is no basis in law, fact, or equity to vacate the Awards.

25. The time for the Hotel to move to vacate the Awards or assert affirmative defenses to confirmation of the Awards has passed.

26. No prior application for the relief requested herein has been made to this or any other court or judge.

{00690320-1}

## **REQUEST FOR RELIEF**

**WHEREFORE**, for the reasons and upon the authority set forth herein, in the Tramposch Declaration, the Union's accompanying Memorandum of Law, and all papers filed in this action, the Union respectfully requests an Order be made and entered:

a) Granting the Petition and the Union's motion to confirm the Awards and entering judgment ordering compliance therewith, including payment of a total of $159,967.24, consisting of wages of $105,420.60, COBRA premiums of $38,760.55, and a 15% contractual penalty of $15,786.09;

b) Granting the Union pre-judgment interest since the date of the final Award, April 16, 2021;

c) Granting the Union post-judgment interest;

d) Granting the Union attorney's fees, costs, disbursements; and

e) Granting such other equitable and further relief this Court deems fair and appropriate.

Dated: New York, New York
October 12, 2021

PITTA LLP
*Attorneys for Petitioner*

By: _____
Michael Bauman
(mbauman@pittalaw.com)
120 Broadway, 28th Floor
New York, NY 10271
Telephone: 212-652-3890
Facsimile: 212-652-3891

{00690320-1}