UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEW YORK HOTEL AND MOTEL TRADES COUNCIL, AFL-CIO,<br><br>Petitioner,<br><br>v.<br><br>NAVIKA CAPITAL GROUP LLC d/b/a SHERATON MAHWAH HOTEL,<br><br>Respondents. | Civ. No. 21-cv-18605 (WJM)<br><br><br>OPINION |

## WILLIAM J. MARTINI, U.S.D.J.:

This matter comes before the Court on an unopposed petition by New York Hotel and Motel Trades Council, AFL-CIO ("Union") to confirm labor arbitration award Nos. 2020-95, 2021-09, and 2021-42 ("the Awards") issued by the Impartial Chairperson ("IC"), a permanent industry arbitrator. ECF No. 3. Petitioner also seeks pre and post judgment interest. The underlying dispute concerned Defendant Navika Capital Group LLC d/b/a Sheraton Mahwah Hotel's ("Hotel") failure to pay severance to its terminated employees or contribute to the health benefit fund on their behalf. This matter is decided without oral argument pursuant to Fed. R. Civ. P. 78(b). For the reasons set forth below, the petition is **GRANTED**.

### I. BACKGROUND

The employment terms and conditions for workers represented by the Union outside the five New York boroughs including New Jersey are generally governed by the Greater Regional Industry Wide Agreement ("GRIWA"), entered between the Union and the Hotel Association of New York City, Inc. *See* Declaration of Alyssa Tramposch ("Tramposch Decl."), ¶ 5, ECF No. 2. Navika Capital, as owner of the Hotel, executed an assumption agreement binding it and all affiliated or related entities to the GRIWA. *See* Assumption Agmt., attached to Tramposch Decl. as Ex. B, ECF No. 2-2.

In March 2020, as a result of the Covid-19 pandemic, the New York region hospitality industry largely closed for an indeterminate length and hotel occupancy fell from 77% in February 2020 to about 34% in March 2020. Tramposch Decl., ¶ 13. The Hotel laid off most of its employees on March 21, 2020, but never completely closed. *Id.*

1

at ¶ 14. Notwithstanding that Article 55 of the GRIWA requires severance pay with continued health care coverage in the case of a hotel closing, *see* GRIWA, attached to Tramposch Decl. as Ex. A, ECF No. 2-1, the Hotel failed to make the requisite payments to its terminated employees or health benefit fund contributions on their behalf. Tramposch Decl., ¶ 15.

The Union demanded arbitration before the Impartial Chairperson ("IC") pursuant to Article 24 of the GRIWA, which states in part: "[a]ll complaints, disputes or grievances arising between the parties hereto involving questions or interpretation or application of any clause of this Agreement…shall be referred to a permanent umpire(s) to be known as Impartial Chairperson, and his/her decision shall be final and binding upon the parties hereto."

The Union and Hotel presented their respective positions by evidence and argument at arbitration hearings before the IC on December 4, 2020, January 28, 2021, and March 15, 2021. Tramposch Decl., ¶¶ 17-18. The IC rendered Award 2020-95 on December 7, 2020, Award 2021-09 on January 28, 2021, and Award 2021-42 on April 16, 2021, each in favor of the Union. *Id.* at ¶ 18, Awards attached to Tramposch Decl. as Ex. D, ECF No. 2-4. The Awards direct the Hotel to pay wages of $105,240.60 plus a 15% contractual penalty of $15,786.09, and health benefit funds contributions of $38,760.55, totaling $159,787.24.[1] Award 2021-42. As of the filing of the present petition, the Hotel has failed to comply with the Awards and the time for the Hotel to move to vacate the Awards has passed.

On October 14, 2021, the Union filed a Petition to Confirm Arbitration Award. ECF No. 1. The Hotel has not filed an appearance or any opposition to the Union's application in this matter.

## II.   DISCUSSION

### A. Confirmation of Award

The Federal Arbitration Act ("FAA") provides that: "at any time within one year after the award is made any party to the arbitration may apply … for an order confirming the award, and thereupon the court **must** grant such an order unless the award is vacated, modified, or corrected . . ." 9 U.S.C. § 9 (emphasis added). "'[T]he confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court.'" *Teamsters Loc. 177 v. United Parcel Serv.*, 966 F.3d 245, 248 (3d Cir. 2020) (citing *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176

---

[1] Petitioner erroneously calculates the total as $159,967.24 based on a wage amount of $105,420.60 rather than $105,240.60.

2

(2d Cir. 1984)). "The FAA not only authorizes, but mandates, that district courts confirm arbitration awards by converting them into enforceable judgments through a summary proceeding." *Id.*

Given the strong presumption in favor of arbitration, a court's review of an arbitration award is "exceedingly narrow." *Eichleay Corp. v. Int'l Ass'n of Bridge, Structural, & Ornamental Iron Workers*, 944 F.2d 1047, 1056 (3d Cir.1991). A court may vacate an arbitrator's award when it does not "draw its essence from the collective bargaining agreement." *Tanoma Min. Co. v. Local Union No. 1269, United Mine Workers of Am.*, 896 F.2d 745, 747-48 (3d Cir. 1990). "[S]o long as the arbitrator arguably has construed or applied the contract, the award must be enforced, even if the court is convinced that the arbitrator has committed a serious error." *News Am. Publications, Inc. Daily Racing Form Div. v. Newark Typographical Union Loc. 103*, 921 F.2d 40, 41 (3d Cir. 1990) (citing *United Paperworkers International Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)). Vacatur is proper only if an arbitrator exceeds his authority or manifestly disregards the law. *Major League Umpires Ass'n v. Am. League of Prof'l Baseball Clubs*, 357 F.3d 272, 279–80 (3d Cir. 2004). Here, the arbitrator did neither. The Awards address the parties' arguments, noted the Union's spreadsheet calculation of amounts due, and stated the IC's reasons for the decisions. Even if this conclusion was incorrect, the arbitrator's decision drew its essence from the collective bargaining agreement and certainly did not exceed the IC's authority or manifestly disregard the law.

Moreover, "[i]t is the challenging party's burden to establish the grounds on which an arbitration award may be overturned or modified, and that party is required to do so within three months of the date of the award." *AAMCO Transmissions, LLC v. Winard*, No. 20-6114, 2021 WL 2646887, at *2 (E.D. Pa. June 28, 2021) (citing 9 U.S.C. § 12). The Hotel did not do so. Nor has the Hotel appeared or raised any objections in this proceeding. Thus, the Awards totaling $159,787.24 are confirmed.

B. Interest

1. *Prejudgment Interest*

Petitioner is also granted prejudgment interest on the Awards. Courts typically have discretion to award prejudgment interest in labor law cases where breach of contract damages are "ascertainable with mathematical precision." *Local Union No. 825, 825A, 825B, 825C, 825D, 825R, 825RH of Int'l Union of Operating Engineers v. Key Contracting, LLC*, No. 05-3269, 2006 WL 1540997, at *6 (D.N.J. June 20, 2007). Rather than being punitive, an award of prejudgment interest is intended to compensate the employee with the "time value" of the award since the arbitrator rendered his decision. *See Loc. 825, 825A, 825B, 825C, 825D, 825R, 825RH of Int'l Union of Operating*

*Engineers v. Tuckahoe Sand & Gravel*, No. 06-4784, 2007 WL 1797657, at *11 (D.N.J. June 20, 2007). Interest shall run from the date of the Award, April 16, 2021, until judgment. *See Sun Ship, Inc. v. Matson Navigation, Co.*, 785 F.2d 59, 63 (3d Cir.1986); *Checkers Drive-In Restaurants v. Pandya*, No. 20-405, 2020 WL 1876054, at *3 (E.D. Pa. Apr. 15, 2020).

"In federal question cases, the rate of prejudgment interest is committed to the discretion of the district court." *Sun Ship*, 785 F.2d at 63. "In exercising that discretion, however, the court may be guided by the rate set out in 28 U.S.C. § 1961 (1982)." *Id.* This labor dispute arises under the FAA and thus, in accordance with 28 U.S.C. § 1961, the Court will award pre-judgment interest "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding.[2] the date of the judgment." 28 U.S.C. § 1961 (footnote added); *see, e.g., Anderson v. Consolidated Rail Corp.*, No. 98-6043, 2000 WL 1622863, at *4 (E.D. Pa. Oct. 25, 2000) (citing cases where courts were guided by § 1961 in awarding prejudgment interest). The average 1-year constant maturity Treasury yield for the week of April 9, 2021, as published by the Federal Reserve Board of Governors, was 0.06%. *See* Data Download Program - Chart (federalreserve.gov) or https://www.federalreserve.gov/datadownload/Chart.aspx?rel=H15&series=bf17364827e38702b42a58cf8eaa3f78&lastobs=&from=04/09/2021&to=04/16/2021&filetype=csv&label=include&layout=seriescolumn&pp=Download

The Court therefore will award Petitioner $105.59 in prejudgment interest on Petitioner's $159,787.24 at an annualized rate of 0.06% from April 16, 2021 until May 23, 2022.

### 2. Post-Judgment Interest

Petitioner's request for post-judgment interest pursuant to 28 U.S.C. § 1961(a) is also granted. Section 1961 authorizes "post-judgment interest in cases concerning confirmation of an arbitration monetary award." *Checkers Drive-In Restaurants v. Pandya*, No. 20-405, 2020 WL 1876054, at *3 (E.D. Pa. Apr. 15, 2020) (citing *Intellisystem, LLC v. McHenry*, No. 19-1359, 2019 WL 2715373, at *5 (E.D. Pa. June 26, 2019)). "[A]warding post-judgment interest is not a 'reward,' but rather just compensation to ensure that a money judgment will be worth the same when it is actually received as it was when it was awarded." *Christian v. Joseph*, 15 F.3d 296, 298 (3d Cir.1994).

Post-judgment interest is awarded from the date of the entry of the judgment until the judgment is paid in full, at the rate described in § 1961, and is calculated on the amount of the court's judgment - $159,787.24 plus prejudgment interest. *See Sun Ship,*

---

[2] Period is in the original.

4

prejudgment interest. *See Sun Ship,* 785 F.2d at 63; *see also Virtua Health, Inc. v. Diskriter, Inc.,* 2020 WL 4282752, at *7 (D.N.J. July 27, 2020). The average 1-year constant maturity Treasury yield for the week of May 16, 2022, as published by the Federal Reserve Board of Governors, was 2.07%. *See* The Fed - Selected Interest Rates (Daily) - H.15 - May 05, 2022 (federalreserve.gov) or https://www.federalreserve.gov/releases/h15/

Accordingly, post-judgment interest of $9.07 per day will accrue from the date of the entry of the judgment until the full amount of the judgment is paid.

### III. CONCLUSION

For the reasons set forth above, the IC's Awards are **confirmed** and Petitioner's request for pre and post judgment interest is **granted** as detailed above.

An appropriate Order follows.

_____
WILLIAM J. MARTINI, U.S.D.J.

Date: May 23, 2022